# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | |
|---|---|
| VERONICA GRANT, | |
| v. | Case No.: 1:22-cv-55 |
| TURTLE CREEK ASSETS, LTD., and GORDON ENGLE, individually<br>  Defendants. | |

1. This lawsuit is brought by plaintiff, Veronica Grant ("Plaintiff") by and through her undersigned counsel, against Turtle Creek Assets, Ltd. ("Turtle Creek") and Gordon Engle, individually ("Engle"), pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. and the Texas Finance Code ("TFC") § 392.001, et seq.

## JURISDICTION AND VENUE

2. Jurisdiction of this court is proper pursuant to 28 U.S.C. § 1331 and 15 U.S.C § 1692k(d).

3. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

4. Texas law applies to defendant Turtle Creek, because its principal place of business is in Texas and all of the conduct complained of below occurred in Texas.

5. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred here.

6. Plaintiff resides in this Judicial District and Division.

7. Because Turtle Creek transacts business here, personal jurisdiction is established.

## PARTIES

8. Plaintiff is an adult individual residing in Jefferson County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

9. Turtle Creek is a company operating from Dallas, Texas.

10. Turtle Creek can be served via its registered agent, Gordon Engle, at 5331 Spring Valley Rd., Dallas, Texas 75254.  Engle is a resident of North Carolina and may be served in accordance with Texas or North Carolina law.

11. Turtle Creek is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

12. Engle is a natural person, residing in North Carolina.

13. Engle is the owner of Turtle Creek and its President.

14. Engle actively manages Turtle Creek and directs its company policies.  Engle directly or indirectly instructed the employees of Turtle Creek to act in the manner they acted when attempting collections from Plaintiff as described in the paragraphs below.

15. Engle regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Engle uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

16. Engle is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

17. Engle may be served in accordance with Texas or North Carolina law.

**FACTUAL ALLEGATIONS**

18. Sometime prior to the filing of this Complaint, Plaintiff allegedly incurred a financial obligation that was used primarily for personal, family or household purposes (hereinafter the "Account").  Specifically, Plaintiff believes the account was an old furniture rent-to-own account that originated Aaron's, Inc when Plaintiff rented bedroom furniture.

19. The Account allegedly went into default with the original creditor prior to the filing of this Complaint.

20. After the Account allegedly went into default, the Account was sold to or otherwise transferred to Turtle Creek for collection.

21. The furniture which was the subject of the Account was used in a personal manner by Plaintiff and was not used for business purposes.

22. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

23. Plaintiff admits the existence of the account, but disputes the amount Turtle Creek is attempting to collect.

24. Plaintiff requests that Turtle Creek cease all further communication on the Account.

25. Turtle Creek's collector(s) were employee(s) of Turtle Creek at all times mentioned herein and Turtle Creek acted at all times mentioned herein through its employee(s).

26. During the one year prior to the date of the filing of this Complaint, Turtle Creek and/or representative(s), employee(s) and/or agent(s) of Turtle Creek made telephone calls to and received telephone calls from Plaintiff to collect the Account.

27. In 2011, Plaintiff rented bedroom furniture from Aaron's Inc.

28. When Plaintiff and her then-husband divorced, Plaintiff returned the furniture to Aaron's in accordance with the provisions of the rental agreement.

29. In May 2021, Plaintiff received a letter from Turtle Creek, which, among other things, stated:

> Your Aarons account number C0347-28754 is seriously delinquent.  You have made some payments towards your account, you still have 23 payments left to fulfill your contract.
>
> If you cannot fulfil your lease terms please return the lease items. **PLEASE RETURN THE LEASED ITEMS** . . . **to Aarons Rentals**. Store Number C0347, located at 4110 Dowlen Rd, Beaumont, TX 77706 "… **A CRIMNIAL COMPLAINT MAY BE FILED WITH THE PROPER AUTHORITIES FOR CRIMINAL PROSECUTION**.  Please note, no decision has been made to take legal action against you at this time.  We want to help you avoid any possible legal action.
>
> **"Failure to return leased property can be a felony in Texas."**
> …
>
> "Contact **214-817-4634**"

Errors and emphasis in original.

30. At the time Plaintiff received this letter, Turtle Creek did not have authority to have Plaintiff arrested and/or prosecuted for failing to pay the Account or return the furniture in question.

31. In fear of being arrested and/or criminally charged, Plaintiff called Turtle Creek and spoke with an employee who further threatened to pursue criminal charges if the Account was not repaid.  The same employee of Turtle Creek threatened to garnish 35% of her wages if she did not repay the Account.

32. When this was said, felony charges could not be filed, no lawsuit had been filed against her and Turtle Creek did not have the intention of filing suit against her and had no authority to do so and further had no authority to garnish her wages.

33. The language used by Turtle Creek in the communications described above would cause the least sophisticated consumer to believe that she could be arrested, that she could go to jail,

that she had committed a felony, or that Turtle Creek intended to sue her or pursue criminal charges against her and/or could sue Plaintiff and/or garnish 35% of Plaintiff's wages unless the account was paid or the merchandise returned.

34. As of the filing of this complaint, Turtle Creek has not filed suit on the Account against Plaintiff and has not filed criminal charges

35. The information communicated to Plaintiff by Turtle Creek was false and misleading.

36. Turtle Creek knew that some or all of the information provided to Plaintiff was false.

37. Turtle Creek told Plaintiff the above-described false information in order to trick, deceive and manipulate Plaintiff into transmitting money to Turtle Creek.

38. Plaintiff did not know that the information conveyed to her was false.

39. In the communications described above, Turtle Creek failed to inform Plaintiff that Turtle Creek was a debt collector.

40. In one or more of the communications described above, Turtle Creek failed to inform Plaintiff that Turtle Creek was attempting to collect a debt and that any information obtained by Turtle Creek would be used for the purpose of debt collection.

41. Turtle Creek failed to provide Plaintiff with the notification of her rights to dispute the debt and/or request validation of the debt as required by 15 U.S.C. § 1692g.

42. Turtle Creek conducted all of its efforts to collect the Account from Plaintiff without a surety bond on file with the Texas Secretary of State as required by Tex. Fin. Code § 392.101.

43. The telephone call(s) and letter(s) each individually constituted a "communication" as defined by 15 U.S.C § 1692a(2).

44. The communications each individually conveyed information regarding the Account directly or indirectly to Plaintiff.

45. Turtle Creek's purpose for the communications described above was to attempt to collect the Account.

46. The only reason that Turtle Creek and/or representative(s), employee(s) and/or agent(s) of Turtle Creek had communication with Plaintiff was to attempt to collect the Account.

47. The only reason that Turtle Creek and/or representative(s), employee(s) and/or agent(s) of Turtle Creek had communication with Plaintiff was to attempt to collect the Account.

48. All of the act(s) and omission(s) by Turtle Creek and/or its employees and/or agents alleged in the preceding paragraphs were done knowingly and willfully by Turtle Creek.

49. During all times pertinent hereto, Engle (a) created the collection policies and procedures used by Turtle Creek, and its respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Turtle Creek, (c) oversaw the application of the collection policies and procedures used by Turtle Creek and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Turtle Creek and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Turtle Creek and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by Turtle Creek and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

50. Engle knew that Turtle Creek repeatedly or continuously engaged in collection practices as described above.

51. Engle acted at all times mentioned herein personally and through the employee(s) of Turtle Creek.

52. Turtle Creek and Engle, and their respective agents and employees, knew that the information provided to Plaintiff was false.

53. Turtle Creek and Engle and their respective agents and employees told Plaintiff the above false information in order to trick, deceive and manipulate Plaintiff into transmitting money to Turtle Creek (and indirectly to Engle as well).

54. Engle was aware of the requirements to collect debts in compliance with federal and state laws.  Nonetheless, Engle directed Turtle Creek and its employees to communicate the unlawful things described above to Plaintiff.

55. Engle was aware that a surety bond was required to be filed with the Texas Secretary of State for companies to collect debts from consumers in Texas.

56. Turtle Creek and Engle knowingly purchased defaulted accounts that originated in Texas.

57. Engle knowingly operated Turtle Creek in a way so as to initiate communications with, and receive communications from, residents of Texas.

58. Engle knew that by directing collection attempts to Texas residents via his company Turtle Creek Assets, he would be bound by Texas laws and could be haled into court in Texas.

## **RESPONDEAT SUPERIOR**

59. The representative(s) and/or collector(s) at Turtle Creek were employee(s) and/or agents of Turtle Creek at all times mentioned herein.

60. The representative(s) and/or collector(s) at Turtle Creek were acting within the course of their employment at all times mentioned herein.

61. The representative(s) and/or collector(s) at Turtle Creek were under the direct supervision and control of Turtle Creek at all times mentioned herein.

62. The actions of the representative(s) and/or collector(s) at Turtle Creek are imputed to their employer, Turtle Creek.

### COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq.
### BY TURTLE CREEK ASSETS LTD.

63. The previous paragraphs are incorporated into this Count as if set forth in full.

64. The act(s) and omission(s) of Turtle Creek and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. § 1692d(6) and § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) and § 1692g(a).

65. Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Turtle Creek.

### COUNT II:  VIOLATIONS OF THE TEXAS FINANCE CODE
### BY TURTLE CREEK ASSETS LTD.

66. The previous paragraphs are incorporated into this Count as if set forth in full.

67. The act(s) and omission(s) of Turtle Creek and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code § 392.101 and § 392.301(a)(8) and §392.304(a)(1)&(4)&(5)&(8)&(14)& (19).

68. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Turtle Creek.

69. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Turtle Creek enjoining it from future violations of the Texas Finance Code as described herein.

### COUNT III:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq.
### BY GORDON ENGLE

70. The previous paragraphs are incorporated into this Count as if set forth in full.

71. The act(s) and omission(s) of Gordon Engle violated 15 U.S.C. § 1692d(6) and § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) and § 1692g(a).

72. Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Turtle Creek.

## COUNT IV:  VIOLATIONS OF THE TEXAS FINANCE CODE BY GORDON ENGLE

73. The previous paragraphs are incorporated into this Count as if set forth in full.

74. The act(s) and omission(s) of Gordon Engle violated Tex. Fin. Code § 392.101 and Tex. Fin. Code § 392.301(a)(8) and §392.304(a)(1)&(4)&(5)&(8)&(14)&(19).

75. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Turtle Creek.

76. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Turtle Creek enjoining it from future violations of the Texas Finance Code as described herein.

## COUNT V:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)

77. The previous paragraphs are incorporated into this Count as if set forth in full.

78. Turtle Creek engaged in extreme and outrageous conduct by falsely stating or implying that Plaintiff had been or would be sued and/or would be prosecuted if the Account was not immediately repaid.

79. Engle conspired with Turtle Creek to invade Plaintiff's privacy as described above.

80. The conduct of Turtle Creek and Engle as described above was intentional and it intruded on Plaintiff's solitude, seclusion, or private affairs in such a way that would be highly offensive to a reasonable person.

81. Plaintiff suffered serious emotional distress as a result of the conduct of Turtle Creek and Engle in that he suffered severe emotional distress, anxiety and fear.

## COUNT VI:  EXEMPLARY DAMAGES

82. The previous paragraphs are incorporated into this Count as if set forth in full.

83. Exemplary damages should be awarded against Turtle Creek and/or Engle because the harm with respect to which Plaintiff seeks recovery of exemplary damages resulted from malice (which means that there was a specific intent by Turtle Creek and Engle to cause substantial injury or harm to Plaintiff) and/or gross negligence (which means that the actions and/or omissions of Turtle Creek and Engle (i) when viewed objectively from the standpoint of Turtle Creek and Engle at the time of the acts and/or omissions, those acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others and (ii) were such that Turtle Creek and Engle had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of  others).

## JURY TRIAL DEMAND

84. Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

85. Judgment in favor of Plaintiff and against Turtle Creek as follows:

    a. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. Statutory damages in the amount of $100 per violation of the chapter in which Tex. Fin. Code § 392.403(e) is codified.

    e. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

    f.  An injunction permanently enjoining it from future violations of the Texas Finance Code as described above, pursuant to Tex. Fin. Code §392.403(1);

    g.  Exemplary damages pursuant to the common law of Texas, see, e.g. Waterfield Mortgage Co., Inc. v. Rodriguez, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    h.  Such other and further relief as the Court deems just and proper.

86. Judgment in favor of Plaintiff and against Gordon Engle as follows:

    a.  Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

    b.  Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    c.  Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d.  Statutory damages in the amount of $100 per violation of the chapter in which Tex. Fin. Code § 392.403(e) is codified.

    e.  Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

    f.  An injunction permanently enjoining it from future violations of the Texas Finance Code as described above, pursuant to Tex. Fin. Code §392.403(1);

    g.  Exemplary damages pursuant to the common law of Texas, see, e.g. Waterfield Mortgage Co., Inc. v. Rodriguez, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    h.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
The Wood Firm, PLLC
11610 Pleasant Ridge Rd.
Suite 103, Box 208
Little Rock, AR  72223
TEL:  682-651-7599
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com